May it please the Court, Zandra Lopez of the Federal Defenders on behalf of Mr. Amparo. During Mr. Amparo's sentencing for the illegal re-entry conviction, the District Court violated his due process rights to not be sentenced on the basis of inaccurate or unreliable information. The summary hearsay statements found in the 2005 police reports amounted to nothing more than mere allegations. And the District Court's finding that the State's charging documents and Mr. Amparo's plea corroborated the allegations of violence or malice was incorrect. The report standing on their own. But he, the District Court, the crime had those words in it, and he, and they had other words, and he fled to the other words. That's right. But the District Court never specifically said that he did anything violent or malicious. He said he committed this crime, which was essentially extortion or kidnapping, which apparently he did. Well, actually, the Court at the end of the sentencing hearing found that it had all the cosmetics of exercising force or the willingness to do so. And throughout the sentencing hearing, the District Court said that he was, Mr. Amparo was willing to use violence. We're not going to do this peacefully. And he stated that Mr. Amparo was willing to bodily resist turning over the girl. And at the end, again, he says he had all the cosmetics of forceful willingness to use force. Did Mr. Amparo's own account say that he wasn't willing to turn over the girl? No. It didn't. I thought he said that she didn't give him the money, so he didn't give her the girl. The summary statements of Mr. Amparo from 2005 said something about there being an agreement and that the mother would turn over the money later. Right. There's nothing about I wasn't willing to turn over the girl at that time. There was nothing about violence or threat of violence or not turning over the girl at that time. We've had the violence or threat of violence. But he did say I wasn't going to give the girl until I got the money. No? No. I believe, Your Honor, he said that he met her at the Kmart. She said she didn't have the money, and they agreed to meet at a later time to turn over the money. Well, and he didn't give her the girl. It was the girl. He was – based on the police reports with Mr. Amparo. But, again, we don't know the accuracy of those police reports. Is your best argument – is the core of your argument that the judge should not have relied on the hearsay in the police reports? That is, he should not have credited the statements of the mother and daughter? Is that your best – is that the core of your argument? The core of the argument is that the police reports, like this in the concurrence says that police reports don't tell you what the defendant actually did. It doesn't account for later misrepresentations or lies made to the police officers, and they're not reliable. And there was nothing to rebut that. Well, of course, the law does permit a district judge at sentencing to rely on hearsay, as long as there's a minimal indicia of reliability to support probable accuracy and in looking at this record, how do you deal with the evidence or the indications that the judge was careful to get good information? I mean, he recessed it for – continued the sentencing for an extended period so he could get a PSR, so he could get documents, he could really understand what was going on. And he looked at the police report, and he did make findings that the statements were consistent with other information, corroborated by other information. Right. And, I mean, that's exactly what the judge is supposed to do under the law, right? Exactly. But the problem is that when the judge determined that it was consistent to something, it was consistent to the charging document and Mr. Ampato's plea. Just like in – just like in district and Federal district court, in the California courts, the judges do, at sentencing, try to determine the factual basis. And at the State court, there's nothing to suggest that Mr. Ampato stipulated to the police reports or that they were somehow part of the plea. He doesn't have to, does he? No, but in the – well, actually – To permit the judge to rely on them if they meet the minimal indicia of reliability? But the problem is, Your Honor, that the court, the district court here, said that these statements were reliable because Mr. Ampato pled to them, and that's not accurate. Mr. Ampato didn't plead to violence, didn't plead to menace. And the State court, after reviewing the factual basis, agreed that violence and menace were not part of the plea and agreed to simply fraud and deceit. What the court said, for example, is that he – some kind of kidnapping for a ransom or some kind of extortion against somebody, the kid was being held and he had something to do with that. And that's really pretty consistent with his own story. So that's your understanding and that's a fair characterization. Then we have a different view of whether that portends that he might still be dangerous at this point. In other words, he thought that was sufficient to make him dangerous. Given the fact that he was – I mean, he also – that was only a part of what was said, that he also had come back 38 times or something like that. Right. But like Your Honor indicated, the court continued the sentencing to determine this because he thought this was important to determine if he was dangerous, if he was presently dangerous. And the majority of – And he concluded he was. 90 percent. So what's wrong with that conclusion? At least a recidivist. A dedicated recidivist. The problem is, the problem is that if you look at what the court relied upon, which is Mr. Ampato's plea, it's – It's exclusively. That's not all he relied upon. I mean, you talked about it yourself. He went back. He's got the police reports. He summarizes it. He says in effect, okay, he cuts this violence part out. But the extortion, the holding, that's the core of what he sees as troublesome, what he sees as the basis of concluding the defendant is dangerous. And I don't see what's wrong with that conclusion. The problem is that violence and menace describe what the court found. And under California law, it's either the youth – violence is the use of force beyond what the substance is carrying. That's what I wanted to know. Where are you getting that from? California law. Where are you getting the fact that he had violence and menace? In the record. Well, Your Honor, he repeatedly said that he pled to violence and menace. Then he actually summarized or alleged statements made by Mr. Ampato. If we don't get the money, you don't get her. We're not going to do this peacefully. We will bodily resist turning over this girl. And at the end, he says it has all the cosmetics of force or willingness to use force. What page are you on there? That's ER 102. And we're not going to do this peacefully. It's at ER 66. We will bodily resist turning over the girl. It's at 102. But he did say, I mean, he recognizes that there was not any actual violence. What he's talking about is an implied willingness not to physically restrain the girl to hold her until the money is paid. An implied willingness to use violence, which is malice. Well, violence here can be simply holding against her will. Which would be fraud and deceit. But the court found that it wasn't. At the initial sentencing hearing, the court knew that Mr. Ampato pled to false imprisonment by fraud and deceit. Right. The court found that that wasn't enough to conclude that whether or not Mr. Ampato was dangerous. But he wanted to find out more. We're talking about a three-month upward departure, right, from the top of the guidelines? That's correct. And what the judge also relies on, as I understand the record, and tell me if I'm misunderstanding it, is that there were additional grounds for the upward adjustment. The defendant's repeated reentries into the United States after being removed, after being convicted, his apparent intent to return again because of family ties. There's – isn't there plenty there for us to say, if that was the judge's judgment based on all the information, it's within his discretion to reach that conclusion? The problem is that this is a constitutional violation. It's the government's burden to prove beyond a reasonable doubt that this didn't affect the sentence. And the bottom line – Wait. Stop. I don't understand that at all. He's got a sentencing range. He's allowed to depart from it as long as it's within the sentence maximum. Right. District judges have discretion and can exercise judgment. And he looks at somebody who's come back repeatedly, who's previously been convicted. I mean, we've had lots of Judge Byrne's cases. We know what weighs on his mind. How is this surprising and how is this a constitutional violation? The Court knew – was well aware of all those other factors at the initial sentencing, but the Court found it necessary to determine. And that's a bad thing? No, it's not. To dig in deeper? It's not a bad thing, but it did – but it did affect Mr. Amparo's sentence. The Court could have easily said, look, I'm not going to make a finding on the disputed issue. I'm not going to determine reliability because it's not necessary to the ultimate sentence. But he thought it was. It's not going to affect his sentence, but it did. But that's right. He thought it was necessary to determine reliability. He found it sufficiently reliable to meet the minimal indicia test. He explained why. Even if we were to perhaps imagine a way to do it differently, that's not the standard of review. But it goes – it goes to whether it affected Mr. Amparo's sentence. And because the Court found it necessary to determine these issues, it did affect his sentence. But that's okay as long as it meets the judge's – as long as it's within the judge's discretion and a correct statement of legal standard. He appears to have stated it correctly. But I – but what I'm getting at, Your Honor, is the fact that without this, his sentence may have been different. Okay.  Thank you. Thank you, sir. Thank you. Good morning to the Court. I am Carlos Arguello, Assisting United States Attorney in San Diego with the U.S. Attorney's Office. And as the Court had indicated, here we are again in another Judge Burns case with Judge Benitez added to the mix as well. There's no question in this case, Mr. Amparo got hit hard. 18 plus 14, it was a 32-month sentence for the illegal entry conviction. So the question becomes, after receiving the sentence where part of it was above the guidelines and the other part of it, the consecutive portion, was the high end of the guidelines. So the question is, did he deserve them? Had he earned it? And as a result, was it a reasonable sentence or did the courts both, or one or the other, abuse its discretion? Aside from the issue of the false imprisonment felony prior, there was also the three – this was a third immigration felony for Mr. Amparo. And they were in two-year increments that started in 2008. 2008, there was a first felony conviction. He received 138 days. Two years later in 2010, there's the second 1326 conviction. At that point, Judge Benitez still essentially gives him a break. And I believe it was the low end of the guideline range. And that's when in 2012, again, another two-year increment, that's when Amparo comes back again and finds himself before the Court with this progressing immigration record, along with the fact, as the Court indicated, the 30-plus apprehensions over the years, the fact that even though it was in 2005, seven years earlier, there was still a driving under the influence condition. If you've got two unhappy judges, and they each decide to whack them pretty good, is the full double whammy too much? Or why isn't it too much? I would suggest to the Court that the United States in this case had recommended a consecutive sentence in the supervised release case, but it was less notice. But you would say that your office was trying to whack them, and it may have been one or two judges, each of whom were ticked off. And Judge Benitez in particular makes a point of saying, look, I'm not doing it because you came back. I'm doing it because I take supervised release seriously. And you said you'd obey, and you didn't, and I'm ticked off, and you're going to pay the price. And you recommended six months consecutive, as I recall the record, not the sentence that he did get from the revocation. Correct, Your Honor. I believe it was 6 to 14, I want to say. But I think it's still within reason, because I think at the 14-month level, that's I think where the Court is pretty much saying, what are we going to do with you? What are we going to do? How are we going to get? Can I ask Judge Clifton's question in a slightly different way? Please. It goes to the double whammy effect. If the first judge is in part relying on the need for better deterrence to justify the upward departure of three months from the top of the guidelines, and the revocation judge is clearly relying on his frustration over the insufficient deterrence of prior sentences, which have been in the six-month range, both of them are essentially drawing on the same sentencing goal to justify where they are. And does that underscore the kind of double whammy argument? And if so, is that an abuse of discretion? I think, Your Honor, when it comes down to it, there is also the different, as the Court indicated, the different goals of the sentencing court with the new case and the sentencing court with the new case. But the problem seems to be that there may not have been different calls. That's the problem. That's the problem. Well, as the Court just indicated, I think one is punishment for the new offense. And the other is, while we may have an issue of semantics, of course, the breach of trust. But the strange, well, the peculiar thing about being on supervised release when one is a deported alien is how else are you really going to breach the trust? Because they're not going to find out of any transgressions in another country. It's just what happens here in the United States. And unless they were arrested after they came in, you know, for a petty theft, a DUI, whatever, that's usually how perhaps the most common way to violate the terms of supervised release. And there's also, I think, the question, too, of like, well, what's a sanction and what is punishment? And did Judge Benitez, which did he really impose? But whatever he called it, and I think he called it a rose, and I didn't intend that rhyme. That just happened right now. But he really emphasized it's breach of trust. I told you when I gave you six months, don't come back. I'm taking a chance on you. I could give you more because you have the prior, you have a felony, you have a DUI, and your immigration removal record is horrendous. But I'm going to take a chance on you. And coming from a Judge Benitez, that's a gift. And within, he's removed in August of 2010. To Mr. Amparo's credit, he's gone for almost two years. But then again, we don't know when exactly he came back because he was found in the United States. But given him the benefit of the doubt, it was two years. But still, it's still in that progressive state, or that repetitive cycle, rather. Let me ask a question that really is not anything within the record or indeed the legal standard. What is the practice now in your office of asking for supervised release when it's illegal reentry cases and you're sentencing? Your Honor, I will give my best answer. But I think also I would like some help from counsel who might have a better communication. Since judges no longer have to impose supervised release, are they now routinely not? I don't handle too many fast track. I handle my share, Your Honor, but not that many I think to come up with an educated conclusion. But I would say I think the courts, as when the guidelines changed, absolutely. I would think most of them are not. So this is not likely to arise routinely at least in the future? No. No. But I will say this, and I can stand corrected by counsel. In a situation like this where you have a prior record, there will be some imposition of supervised release. Sure. Sure. And that makes sense. Again, it's like what have you — have they earned it? I think so. Suppose we thought there was a problem with the — With the 32-month sentence? Well, that's what I'm about to ask you. We thought it was a problem. What's the problem? What would we say the problem is? Would we then deal with the 14-month sentence and say that it should have been less or what? I think within reason, Your Honor, I think it could have been less. I think it could have been reasonable and less. So that's the second judge's problem, not the first, because the first judge wouldn't have known what the second judge would do. And if the first judge operated within that judge's prerogatives, then we really would only have a legal defect with the second sentence. Right. And I think you would think that the second judge is going to take into account, all right, he got hit pretty good, I'm going to make up a little difference, but I think that's the — But he didn't know that. Your Honor, I think — Judge Bonetus knew about the 18-month sentence. Absolutely. Absolutely. And frankly, that's the part that tells me that he's responding to what he views as the breach of trust. His focus isn't as much at that moment on deterrence, which it might have been if he had the first crack. But he — and I've come to see Judge Bonetus over time, too. I think he was really offended, and he wants to send a message. You don't — you don't dick around with the Court like that. And so he comes out with both ferrules. And you can tell by the frustration, too, towards the end of the calendar. I'm sorry. I just may well have been at the end of the calendar, but towards the end of the sentencing, he's just basically sending us to say, okay, you know, court of appeals, you know, tell me if I'm wrong. But I don't think it was so much of a challenge or an affront, but I think his frustration with — and it happens to both sides, to our side and to the defense. Well, you see far more than I do. But my sense is the slack that he cut the first time was a little out of the ordinary, and his — you know, the pendulum swings back. Having decided to cut some slack, he particularly did not like what happened. Which I think if I were a defense attorney, that's one of the toughest situations to be in, is when there's a record that says if you come back, it's not going to look good, and I'm really taking a chance on you, and I think that's what happened. And I think regardless of what Judge Burns imposed, I don't think it even mattered anymore to Judge Benitez. He was going to do what he was going to do. And he takes it with a little bit of sarcasm, too, saying, you know, you guys have your agreement, but, you know, Mr. Arguello, maybe you won't play golf on Saturday. You can take care of this appeal. Okay. Thank you very much. Thank you, Your Honor. Any rebuttal? Looks like I have a minute. Getting to the — oh, thank you. The revocation of supervised release. Even if, and I think this is what the argument that was made below, the court can take into consideration deterrence and breach of trust, the arguments by both the defense counsel and the government were that six months was sufficient to meet those concerns of the court. And the district court never addressed that, never said why it needed to be more than six months consecutive, too. Doesn't the judge explain his belief that six months had not been enough to send the message previously, and he was responding to the need for increased punishment because of the repeated violations? He said, last time I gave you a break, I gave you six months. I could have given you 12. And so that's what the parties were asking for, give him the additional six months that you could have given him last time. And the district court never addressed the fact that Judge Burns did bump up his sentence significantly, and never addressed, well, maybe I should consider what Judge Burns did and ultimately determine what sentence should be given to Mr. Amparo on this second round of the sentence. And it does seem like the court went well beyond, said, look, I know he considered deterrence, I know that he considered this, but I'm going to do the double and give him more. But there's no explanation as to why the six months requested by both parties wasn't sufficient and no greater than necessary to meet those goals by the sentencing judge. Unless Your Honors have any further questions. Thank you very much. I thank both of you for your arguments. The United States v. Amparo-Palomaris is.
judges: Rosenthal, BERZON, CLIFTON